**NOT FOR PUBLICATION**

UNITED     STATES     DISTRICT     COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES LOUIS,<br><br>                                 Plaintiff,<br><br>                    v.<br><br>STATE OF NEW JERSEY, *et al.*,<br><br>                                 Defendants. | Case No. 22cv4490 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff James Louis was incarcerated for 25 years, 11 months, and 24 days after he was convicted of murder and related offenses stemming from a fatal shooting in 1994.  Ultimately, those charges were dropped in 2020.  Now, Plaintiff sues Defendants for their alleged involvement in his unlawful arrest and prosecution.  Two Defendants, Lieutenant Edward Johnson ("Lt. Johnson") and Assistant Prosecutor Ann Rubin ("Pros. Rubin") (collectively "Prosecutor Defendants"), move to dismiss Plaintiff's Complaint with respect to the claims brought against them on immunity grounds.  D.E. 10 ("Mot.") at 2.  The Court decides the motion without oral argument.  *See* Fed. R. Civ. P. 78(b); L.Civ.R.78(b).  For the reasons below, Defendants' motion will be **GRANTED**.[1]

---

[1] Dismissals are with prejudice, as the Court finds that based on the applicable immunities and the alleged facts, amendment could not remedy the Complaint's deficiencies.

I.    **BACKGROUND**[2]

On March 20, 1994, a group of individuals were standing outside a house in Elizabeth, New Jersey, when two men stepped out of a black Acura Legend and began firing shots at the group ("the Shootings").  D.E. 2, Ex. A ("Compl.") ¶¶ 1, 4-5.[3]  The gunmen hit two individuals, one of whom died.  *Id.* ¶ 6.  Of the seven witnesses to the Shootings, five knew Plaintiff well.  *Id.* ¶¶ 7-8.  None of those five ever placed Plaintiff at the crime scene.  *Id.* ¶ 10.  Throughout Plaintiff's arrest and prosecution, the only individuals to tell police that Plaintiff was involved in the Shootings were Allison Johnson, a paid police informant ("Ms. Johnson"); Ms. Johnson's 13-year-old daughter Khadijah Johnson (collectively, "Johnsons"); and Kimberly Minus, an eyewitness to the Shooting who did not know Plaintiff well.  *Id.* ¶¶ 3, 34, 57-69.

Plaintiff, a Haitian-American citizen, alleges that his arrest was part of the "routine" and "customary" violation of the constitutional rights of Haitian, African American, and Hispanic citizens of Elizabeth.  *Id.* at 3.  Specifically, "based on nothing but [D]efendants' false, stereotypical, and racist assumption that a Haitian American male was involved in and had knowledge of the Shooting," Defendants fabricated evidence, filed false charges, and coerced witnesses to provide false statements to prosecute Plaintiff.  *Id.* Count IX, ¶ 4.  Furthermore, several Defendants, including Defendant Detective Thomas Koczur ("Det. Koczur"), were a part of the "Family"[4] or other "malfeasant-department authorities and command structures" within the

---

[2] The facts in this section are taken from the well-pled allegations in the Complaint, which the Court presumes to be true for purposes of resolving the instant motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Plaintiff's Complaint restarts paragraph numbers with each Count.  Accordingly, when citing to material within a Count, the Court will cite to the Count and paragraph number(s) to minimize confusion (*e.g.*, Count 1, ⁋ 1).

[4] The "Family" was a subgroup of police officers in the Elizabeth Police Department that was formed in the absence of an "*official* leadership and command structure willing to accept responsibility for the proper and constitutional operation" of the Elizabeth Police Department.  *Id.*

Elizabeth Police Department ("EPD") that enabled the long-term violation of minority citizens' constitutional rights. *See, e.g.*, *id.* ¶¶ 19, 95, 109, 114. Plaintiff's Complaint focuses on the police interviews with, and trial testimony of, the Johnsons and Minus.

## A. The Johnsons

While investigating the Shootings, Det. Koczur of the EPD coerced Ms. Johnson into providing a statement that she saw Plaintiff and another suspect in Elizabeth the night of the Shootings. *Id.* ¶ 35. Specifically, Det. Koczur directed Ms. Johnson to say (and later testify at trial) that Plaintiff and another suspect came to her apartment several hours after the Shootings, and that Plaintiff stayed in her apartment for the following two weeks while "hiding out" from the police. *Id.* at Count I, ¶¶ 18-20, 36. To obtain Ms. Johnson's statement, Det. Koczur brought her to the police station, and, given her status as a well-known and frequently used paid informant, "snuck" her in. *Id.* ¶¶ 41-42. Then, Det. Koczur conducted "an improper and suggestive photo identification procedure" with Ms. Johnson, in which Det. Koczur "pointed to the individuals he wanted" Ms. Johnson to identify (including Plaintiff). *Id.* ¶¶ 43-44. In exchange for her informant work, Ms. Johnson said she was paid cash and had some of her cases removed from the court's docket; she also believed some of her court fines were resolved. *Id.* at Count I, ¶ 13.

Based on Ms. Johnson's identification, the police arrested Plaintiff on July 5, 1994. *Id.* ¶ 49. That same day, Det. Koczur interviewed Plaintiff for approximately two hours, during which Plaintiff made a recorded statement that Det. Koczur and other members of the EPD "knew or should have known" was false due to its many errors. *Id.* at Count I, ¶¶ 50-54. At trial, the Johnsons falsely testified to the above. *Id.* at Count I, ¶¶ 25-26, 28. Later, the Johnsons both

---

¶ 95 (emphasis in original). Plaintiff alleges the Family has had a long-lasting "corrupt and subversive" influence on the Elizabeth Police Department. *Id.* ¶ 143.

admitted in affidavits that they lied when testifying that Plaintiff stayed with them following the Shootings.  *Id.* at Count I, ¶ 25.  Ms. Johnson stated that the police "coaxed" her into incriminating the suspects the police believed were responsible.  *Id.* at Count I, ¶ 28.  And Pros. Rubin (at some unspecified time) visited Ms. Johnson and "coaxed her" into incriminating Plaintiff and others.[5] *Id.* at Count I, ¶ 29.

Based on the Johnsons' testimony, Pros. Rubin told the jury that Plaintiff was "hiding out" from the police following the Shooting.  *Id.* ¶ 20.  Yet, it was never disclosed to Plaintiff or to the jury at trial that Ms. Johnson was a paid informant, which Plaintiff alleges deprived him of the opportunity to call into doubt the testimony of two of the Prosecution's three key witnesses.  *Id.* at Count I, ¶¶ 16, 21-24.  The Complaint never states that Pros. Rubin knew or "should have known" that Ms. Johnson was a paid informant; however, Det. Koczur allegedly did know.  *Id.* at Count I, ¶ 41.  Regardless, Pros. Rubin "should have known" that Ms. Johnson's status as a paid informant would significantly undermine Ms. Johnson's credibility as a witness.  *Id.* ¶¶ 23-24.  Also, Pros. Rubin "should have known" that Ms. Johnson directed her daughter to lie on the stand.  *Id.* ¶ 27.

---

[5] The Complaint does not state whether Pros. Rubin became involved before or after Plaintiff's arrest.  Prosecutor Defendants argue that their involvement was solely post-arrest because in Count III of the Complaint, Plaintiff states that Prosecutor Defendants "*furthered the prosecution*" against Plaintiff.  Reply at 3 (emphasis in original) (quoting Compl. at Count III, ¶ 4).  They contrast this language with the language in the preceding paragraph: Defendants the City of Elizabeth and Det. Koczur "'*initiated criminal proceedings*'" against Plaintiff.  *Id.* (emphasis in original) (quoting Compl. at Count III, ¶ 3); *see also Brady v. Office of the Cnty. Prosecutor*, 2020 WL 5088634, at *5-6 (D.N.J. Aug. 28, 2020) (similarly inferring that a prosecutor was only involved after the arrest of the plaintiff because the complaint alleged that the prosecutor defendant was responsible for the "continued" prosecution of the plaintiff).

**B.  Kimberly Minus**

On January 26, 1995, Lt. Johnson,[6] at the direction of Pros. Rubin, first interviewed Minus. *Id.* at Count I, ¶ 41.  Minus identified Plaintiff as a suspect in a photo lineup.  *Id.* at Count I, ¶ 54.  Plaintiff alleges this identification was the product of a series of "suggestive and unreliable interviews."  *Id.* ¶¶ 57-69, Count I, ¶¶ 30-59.   Prosecutor Defendants "should have known" Minus's statement was unreliable because: (1) it was made ten months after the Shootings, (2) Minus did not know the date of the Shootings during her first interview,[7] (3) Lt. Johnson did not ask Minus whether she recalled any "rudimentary information about the physical descriptors of the defendants," and (4) most importantly, Lt. Johnson violated police protocol by not reading the required instructions to Minus.  *Id.* ¶¶ 60-62, 80-82, 85-91, Count I, ¶¶ 51, 54-57.  Moreover, Lt. Johnson "visual queue[ed]" which photos Minus should select, something Pros. Rubin "should have known" occurred.  *Id.* at Count I, ¶¶ 51, 54, 59.

Minus's recorded statement on January 26, 1995, was not signed.  *Id.* ¶ 64.  According to Plaintiff, after Prosecutor Defendants met and discussed Minus's statement with other Defendants, Lt. Johnson brought Minus back to the station on January 30, 1995, to give a corrected and signed statement.  *Id.* ¶¶ 65-69.  Additionally, Prosecutor Defendants "should have known" Minus's statement was inaccurate and unreliable because she could not identify Plaintiff or any other suspect at trial, she conceded that she "merely guessed" during the photo lineup, and she testified at trial that during the Shootings, "the only thing [she] really noticed basically was [that] these guys came up with these guns."  *Id.* ¶¶ 88, 91-94, Count I, ¶¶ 53, 56-59.

---

[6] The Complaint indicates that Lt. Johnson first became involved with the investigation in January 1995 when the Union County Prosecutor's Office assigned him to conduct a "follow-up investigation."  *Id.* at Count I, ¶ 30.

[7] Lt. Johnson allegedly told Minus the date of the Shootings during the interview.  Compl. ¶ 63.

### C.  Procedural History

Plaintiff filed a 12-count Complaint in state court.  The Attorney General of New Jersey, who represents multiple parties in this case,[8] removed to federal court.  D.E. 2.  Against Prosecutor Defendants,[9] Plaintiff alleges various claims under 42 U.S.C. § 1983 for malicious prosecution (Count III), abuse of process (Count IV),[10] due process violations (Count V), racial discrimination (Count IX)[11], and conspiracy (Count VI).[12]  In addition, Plaintiff brings a state law claim under the New Jersey Civil Rights Act ("NJCRA") (Count XI).  Finally, Plaintiff alleges common law claims of malicious prosecution (Count III) and negligent and intentional infliction of emotional distress (Count X).  Plaintiff seeks general damages, compensatory damages, punitive damages, costs and interest, attorney's fees, and any other relief the Court deems just and equitable.  Compl. ¶¶ A-F.

Prosecutor Defendants now move to dismiss Plaintiff's claims against them pursuant to immunity grounds.  Both Plaintiff and Det. Koczur oppose.  D.E. 23 ("Pl. Opp'n"), D.E. 24 ("Koczur Opp'n").  Prosecutor Defendants replied.  D.E. 27 ("Reply").

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).  To survive a Rule

---

[8] The State of New Jersey, the Department of Treasury, Pros. Rubin, and Lt. Johnson.
[9] The Court only discusses claims brought against Prosecutor Defendants.
[10] Count IV is brought only against Pros. Rubin, not Lt. Johnson.
[11] The Complaint has two Count IXs: negligent hiring & retention, and racial discrimination.  *See* Compl. at 78-83.  Because the negligent hiring & retention count is not brought against Prosecutor Defendants, all references to Count IX are to the racial discrimination count.
[12] Count VI (conspiracy) is alleged under both 42 U.S.C. §§ 1983 and 1985.

12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.   DISCUSSION

Plaintiff sues the Prosecutor Defendants in their official and individual capacities. Prosecutor Defendants argue that the official capacity claims should be dismissed because they are not "persons" amenable to suit under § 1983 or the NJCRA.  Mot. at 6-11.  As for the individual capacity claims, Prosecutor Defendants argue that they are entitled to (1) absolute immunity or, alternatively, (2) qualified immunity, for all actions following[13] Plaintiff's arrest.  Mot. at 11-20. Lastly, Prosecutor Defendants argue that Plaintiff's conspiracy count fails to state a claim against Prosecutor Defendants and that Plaintiff's state law claims fail as a matter of law.  Mot. at 20-24.

### A.  Plaintiff's § 1983 and NJCRA Claims Against Prosecutor Defendants In Their Official Capacities Will Be Dismissed Because They are Not "Persons" Amenable to Suit

42 U.S.C. § 1983 is a remedial statute designed to redress deprivations of constitutional and federal rights.  *See Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979).  To state a claim for relief pursuant to § 1983, a plaintiff must allege (1) a "deprivation of a constitutional right" and (2) "that the constitutional deprivation was caused by a *person* acting under the color of state law." *Phillips*, 515 F.3d at 235 (emphasis added) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)).

---

[13] Despite the Prosecutor Defendants' use of the word "prior" in their briefing, it appears they mean "following" Plaintiff's arrest.  *See* Reply at 18.

In suits against a defendant in their official capacity, the only immunities available "'are forms of sovereign immunity . . . , such as the Eleventh Amendment.'"  *Pierre v. N.J., Treasury Dep't*, 2018 WL 5801549, at *7 (D.N.J. Nov. 5, 2018) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 (1985)).  The Eleventh Amendment protects non-consenting states from suit brought in federal court by private citizens seeking monetary damages or injunctive relief, except for prospective injunctive relief.[14]  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

States cannot be held liable for violations of § 1983 because states are not "persons."  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, (1989).  This immunity is extended to state agencies and instrumentalities acting as "arms of the state."  *Id.* at 70-71.  Accordingly, "'state officials acting in their official capacities are not "persons" under [§] 1983.'"  *Brady v. Office of the Cnty. Prosecutor*, 2020 WL 5088634, at *4 (D.N.J. Aug. 28, 2020) (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996)).  The analysis for official capacity claims under the NJCRA, which provides a cause of action against "a person acting under color of law" (N.J. Stat. Ann. § 10:6-2), is the same as under § 1983.  *See, e.g.*, *Didiano v. Balicki*, 488 F. App'x 634, 638 (3d Cir. 2012).

"[W]hen [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State" and are entitled to Eleventh Amendment immunity.  *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996), *abrogated on other grounds*.  However, county prosecutors are subject to suit when they perform administrative functions "unrelated to the duties involved in criminal prosecution . . . ."  *Pierre*, 2018 WL 5801549, at *7.

---

[14] The Complaint solely requests monetary damages.  *See generally* Compl.

To be subject to suit, the administrative functions "must be entirely unrelated to the duties involved in criminal prosecution." *Coleman*, 87 F.3d at 1506.

Therefore, if Prosecutor Defendants were engaged in classic law enforcement and investigative functions, they were acting in an official capacity and are not "persons" subject to liability under § 1983 and the NJCRA.

    *1.  Prosecutor Defendants are not persons subject to suit under § 1983 or the NJCRA.*

Prosecutor Defendants argue they are not "persons" amenable to suit under either § 1983 or the NJCRA.  Mot. at 7.  Neither Plaintiff nor Det. Koczur address this argument.  *See generally* Pl. Opp'n and Koczur Opp'n; *see also In re: Elk Cross Timbers Decking Mktg.*, 2015 WL 6467730, at *6 (D.N.J. Oct. 26, 2015) (when a party fails to address an argument in briefing, "that issue [is] . . . treated as unopposed").  The Court agrees with Prosecutor Defendants.

Here, Prosecutor Defendants are entitled to Eleventh Amendment immunity because they were engaged in classic law enforcement and investigative functions and thus were acting as officers of the state.  *See Coleman*, 87 F.3d at 1506.  Based on the Complaint, Prosecutor Defendants' alleged conduct pertains to their preparation for prosecuting Plaintiff.  *See supra* n.3.  Lt. Johnson is alleged to have improperly conducted photo identifications during his "follow-up" investigation several months after Plaintiff's arrest, and Pros. Rubin is to have "effected the wrongful and malicious prosecution" of Plaintiff.  Compl. ¶ 14, Count 1 ¶¶ 30, 51.  Because a photo lineup of suspects and prosecuting a defendant are classic law enforcement and investigative functions, the alleged conduct is not amenable to suit under § 1983.  *Cf. Pierre*, 2018 WL 5801549, at *7 (prosecutors were "clearly" engaged in classic law enforcement and investigative functions when seeking an indictment and presenting witnesses at trial).  Plaintiff does not allege any facts that suggest Prosecutor Defendants were engaging in activates "entirely unrelated" to prosecution.

Accordingly, because Prosecutor Defendants were acting as agents of the State, they are entitled to sovereign immunity for all claims brought against them in their official capacities. The Court will **GRANT** Prosecutor Defendants' motion and **DISMISS with prejudice** Counts III, IV,[15] V, VI, IX, and XI against Prosecutor Defendants in their official capacities.

### B. Prosecutor Defendants are Entitled to Absolute Immunity for Plaintiff's § 1983 Claims Against Prosecutor Defendants In Their Individual Capacities

*1. Absolute Immunity Standards*

The remaining § 1983 claims are those against the Prosecutor Defendants in their individual capacities. Prosecutor Defendants argue they are entitled to absolute immunity, while Plaintiff and Det. Koczur argue they are not.

Under the doctrine of absolute immunity, "a state prosecuting attorney who act[s] within the scope of [their] duties in initiating and pursuing a criminal prosecution" is immune from suit. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). A prosecutor is absolutely immune from actions "intimately associated with the judicial phase of the criminal process" while functioning as the State's advocate, such as initiating a prosecution, presenting the state's case, and other acts. *Id.* at 430-31. A prosecutor's employee, like a detective, is also entitled to absolute immunity "when the employee's function is closely allied to the judicial process." *Davis v. Grusemeyer*, 996 F.2d 617, 631 (3d Cir. 1993); *see also Moore v. Middlesex Cnty. Prosecutors Office*, 503 Fed. App'x 108, 109 (3d Cir. 2012) (same).

Absolute immunity applies to a wide range of conduct, including improperly eliciting a photo identification of a suspect in preparation for trial and failing to disclose that one of the prosecution's witnesses was a police informant. *Pierre*, 2018 WL 5801549, at *7-8; *see also*

---

[15] Count IV of the Complaint was brought only against Pros. Rubin, not Lt. Johnson.

*Burns*, 500 U.S. at 490 (soliciting false testimony from witnesses and using it at trial); *Imbler*, 424 U.S. at 424-27 (knowingly using perjured testimony in a judicial proceeding); *Kulwicki v. Dawson*, 969 F.2d 1454, 1463-64 (3d Cir. 1992) (initiating a prosecution without a good faith belief any wrongdoing occurred); *Jerrytone v. Musto*, 167 F. App'x 295, 300 (3d Cir. 2006) (evaluating evidence collected by investigators and failing to conduct an adequate investigation before filing charges); *Desposito v. New Jersey*, 2015 WL 2131073, at *7 (D.N.J. May 5, 2015) (tampering with witnesses and using false and misleading evidence in a prosecution).

However, absolute immunity does not cover a prosecutor's actions that are not closely associated with the judicial system itself. *See, e.g.*, *Buckley v. Fitzsimmons*, 509 U.S. 259, 276-78 (1993) (no absolute immunity when prosecutor fabricated evidence during a preliminary investigation and held a press conference where they made false statements to the press about the case); *Yarris*, 465 F.3d at 137 (no absolute immunity for deliberately destroying exculpatory evidence).  Absolute immunity also does not apply where the prosecutor's actions serve a purely investigative function.  *Newsome v. City of Newark*, 2014 WL 4798783, at *2 (D.N.J. Sept. 25, 2014) (citations omitted).

To determine whether a prosecutorial activity is closely associated with the judicial system, a court must evaluate the conduct's "functional" considerations.  *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009).  This requires "the Court to look not just at who is being sued, but what the complained of conduct entails, and how such conduct is tied to the judicial process." *Brady*, 2020 WL 5088634, at *5.  Analyzing functional considerations involves two steps.  First, courts determine "what conduct forms the basis for the plaintiff's cause of action." *Fogle v. Sokol*, 957 F.3d 148, 161 (3d Cir. 2020) (citations omitted).  Second, they "determine what function[—prosecutorial, administrative, investigative, or something else entirely—]that act served . . . ." *Id.*

11

This "focuses on the unique facts of each case and avoids bright-line rules[,]" such as "the timing (pre-indictment versus post-indictment) or location (in court versus out of court) of the alleged misconduct." *Newsome*, 2014 WL 4798783, at *3 (citing *Odd*, 538 F.3d at 210).

Courts consider the following factors when determining whether the alleged conduct is prosecutorial or investigative in nature: (1) the timing of the conduct; (2) whether the conduct involves obtaining, reviewing, or evaluating evidence, which tend to be prosecutorial in nature; and (3) whether the conduct involves decisions on how to proceed with a prosecution, as such actions "serve a prosecutorial function." *Id.* at *3.

The prosecutor bears the "heavy burden" of demonstrating entitlement to absolute immunity and "must show that [they] w[ere] functioning as the state's advocate when performing the action(s) in question." *Odd*, 538 F.3d at 207-08 (citations omitted). A defendant must show that the conduct triggering absolute immunity "clearly appear[s] on the face of the complaint." *Fogle*, 957 F.3d at 161-62.

2. *Prosecutor Defendants are entitled to absolute immunity.*

Prosecutor Defendants argue they are both entitled to absolute immunity because (1) Pros. Rubin's alleged conduct relates to her role as an advocate and her evaluation of evidence presented at trial, and (2) Lt. Johnson's alleged conduct relates to his investigative work in connection with an already underway criminal prosecution. Mot. at 14, 16. Plaintiff responds that absolute immunity should not be granted because the Complaint is unclear as to whether the Prosecutor Defendants' conduct occurred during the investigation stage or after Plaintiff's indictment. *See* Pl. Opp'n at 2-3 (citing *Yarris*, 465 F.3d at 138-39, for the proposition that defendants are not entitled to absolute immunity when the complaint is unclear as to when the complained-of conduct occurred).

Prosecutor Defendants disagree, stating that the Complaint "unambiguous[ly]" indicates that Prosecutor Defendants became involved after Plaintiff had been arrested and charged because the Complaint alleges that Prosecutor Defendants "*furthered the prosecution*" against Plaintiff. Reply at 2, 5 (emphasis in original) (internal quotation marks omitted).

The Court agrees with Prosecutor Defendants that they are entitled to absolute immunity. As for Lt. Johnson, it is clear from the Complaint that he was solely involved after Plaintiff's arrest because he was "assigned" to conduct a "follow-up investigation" in January 1995, several months after Plaintiff's arrest on July 5, 1994. Compl. ¶ 49, Count I, ¶ 30.  Lt. Johnson's efforts were exclusively tied to that assignment. *Id.* Because the nature of his role was to further the prosecution of Plaintiff, even if carrying out that objective involved engaging in some investigatory-like conduct, such as interviewing witnesses, Lt. Johnson is still entitled to absolute immunity. *See e.g.*, *Gregg v. Pettit*, 200p WL 57118, at *6 (W.D. Pa. Jan. 8, 2009) (an investigator hired by a prosecutor's office who allegedly manipulated multiple witnesses to "falsely implicate plaintiff" still enjoyed derivative absolute immunity).  Accordingly, the Court will **GRANT** the motion and **DISMISS** the § 1983 claims brought against him in his individual capacity (Counts III, V, VI and IX).

As to Pros. Rubin, the Complaint lacks allegations that identify when she became involved in the investigation and prosecution. *See generally* Compl.[16]  However, while timing is a relevant consideration, it is not dispositive. *Newsome*, 2014 WL 4798783, at *3; *see also Fogle*, 957 F.3d at 163 (quoting *B.S. v. Somerset County*, 704 F.3d 250, 270 (3d Cir. 2013)) (explaining the "'key

---

[16] The Complaint references a ten-month period between March 20, 1994, the night of the shooting, and January 26, 1995, when Minus later provided a statement.  The Complaint states that "*during that time*, Pros. Rubin reviewed, discussed, and planned her prosecution of the suspects . . . ." *Id.* ¶ 59 (emphasis added).  It is also unclear when Pros. Rubin first met with Ms. Johnson.  *See* Compl. at Count I, ¶ 29, Count IV, ¶ 5, Count V, ¶ 4.

to the absolute immunity determination is not the timing of the investigation relative to a judicial proceeding, but rather the underlying function that the investigation serves and the role the [prosecutor] occupies in carrying it out'"). "Depending on the circumstances of each case, some pre-indictment acts [] like obtaining, reviewing, and evaluating evidence in preparation for prosecution [] . . . may be advocative and entitle a prosecutor to absolute immunity." *Odd*, 538 F.3d at 211 n.3.

Because the Complaint alleges that Pros. Rubin "reviewed, discussed, and planned her *prosecution of the suspects*[,]" Compl. ¶ 59 (emphasis added), it concedes that Pros. Rubin's involvement, regardless of timing, was prosecutorial in nature. Pros. Rubin's alleged conduct— "coaxing" testimony from a witness she "should have" deduced was a police informant—falls within the bounds of immunized conduct because it was connected to her prosecution of plaintiff. *See, e.g.*, *Kulwicki*, 969 F.2d 1465 ("Evidence obtained at or after the filing is likely to be connected with an existing prosecution, and is absolutely protected."); *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997) (citations omitted) ("Acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [their] role as an advocate for the State, are entitled to the protections of absolute immunity.").

Because Pros. Rubin was acting in a prosecutorial, rather than investigative role, she too is entitled to absolute immunity from individual capacity claims. Accordingly, the court will **GRANT** Pros. Rubin's motion and **DISMISS** the § 1983 claims against her in her individual capacity (Counts III, IV, V, VI and IX).

**C. Prosecutor Defendants Are Also Entitled to Absolute Immunity in Their Individual Capacities Under the NJCRA**

Plaintiff brings three claims against Prosecutor Defendants under New Jersey statutory and common law: malicious prosecution (Count III), negligent and intentional infliction of emotional distress (Count X), and deprivation of rights under the NJCRA (Count XI).

Unlike its federal counterpart, "absolute immunity" under New Jersey law is not "absolute," and "'a prosecutor [can] incur civil liability for his official conduct'" in some circumstances. *Newsome*, 2014 WL 4798783, at *4 (quoting *Cashen v. Spann*, 66 N.J. 541, 334 (1975)). An immunity similar to absolute immunity was codified in the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:3-8, in 1972. *Van Engelen v. O'Leary*, 732 A.2d 540, 546 n.3 (N.J. Super 1999). The NJTCA's immunity provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment." N.J.S.A. 59:3-8. However, this immunity is limited and does not protect illegal, actual malice, or willful misconduct, or conduct outside the scope of the employee's employment. *See* N.J.S.A. 59:3-14(a); *see also Stolinksi v. PennyPacker*, 2008 WL 5136945, at *5-6 (D.N.J. Dec. 4, 2008) (denying absolute immunity where Plaintiff's malicious prosecution claims were premised on malice or misconduct).

Conduct is "'within the scope of employment if it is of the kind that the [employee] is employed to perform; it occurs substantially within time and space limits; and it is actuated at least in part by a purpose to serve the [employer].'" *Marley v. Borough of Palmyra*, 193 N.J. Super. 271, 295 (Law Div. 1983) (quoting *Di Cosala v. Kay*, 91 N.J. 159, 169 (1982)). This is a question of fact. *Kelly v. Cnty of Monmouth*, 380 N.J. Super. 552, 564 (App. Div. 2005). An employee acts outside the scope of his employment "when he engages in tortious conduct that is not reasonably connected with his employment." *Id.* And, immunity does not apply when a

prosecutor acted for "personal predilection or gain" or "for personal reasons . . . ." *Cashen*, 66 N.J. at 550.

Prosecutor Defendants' alleged conduct describes actions related to the prosecution of Plaintiff: at the direction of the Union County Prosecutor's Office, Lt. Johnson interviewed witnesses following Plaintiff's arrest, and Pros. Rubin prepared for Plaintiff's trial. *See, e.g.*, Compl. ¶¶ 57-94, Count I, ¶¶ 30-59. Because Prosecutor Defendants are employed to prosecute such cases, their conduct in furtherance of the prosecution was within the scope of their employment. *Marley*, 193 N.J. Super. at 295. However, Plaintiff alleges that Prosecutor Defendants' conduct went beyond the scope of their employment because they pursued Plaintiff's prosecution for career advancement and other career perks. Compl. at Count III, ¶ 2. But, Plaintiff alleges no additional facts to support this allegation. *See generally* Compl. "Without more factual allegations, the purported improper motives provided by [Plaintiff] . . . are speculative and conclusory." *Saint-Jean v. Cnty. of Bergen*, 509 F. Supp. 3d 87, 115 (D.N.J. 2020). Plaintiff's bare allegations are insufficient to show how the Plaintiff's prosecution was related to their respective careers or other related perks. *See id.* (collecting cases).

Therefore, without more, the Court will **GRANT** Prosecutor Defendants' motion and **DISMISS** Plaintiff's state law claims against Prosecutor Defendants will be (Counts III, IX, and X).

**D. Prosecutor Defendants are Entitled to Qualified Immunity in Their Individual Capacities Under § 1983 and the NJCRA[17]**

Qualified immunity shields officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The doctrine "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "A plaintiff seeking relief under 42 U.S.C. § 1983 must demonstrate 'that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury.'" *Black v. Montgomery Cnty.*, 835 F.3d 358, 364 (3d Cir. 2016) (quoting *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005)).  Accordingly, § 1983 is not a source of substantive rights, but instead, is a mechanism to vindicate rights afforded by the Constitution or a federal statute. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

"At the motion-to-dismiss stage, courts evaluate qualified immunity for a constitutional claim by examining (i) whether the complaint contains plausible allegations of a constitutional violation and (ii) whether the asserted constitutional right is clearly established." *Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021) (citations omitted).  To evaluate prong one, courts should: (1) articulate the elements of the claim; (2) "scrutinize[] the complaint" to "disregard any 'formulaic recitations of the elements'" and "'threadbare'" legal conclusions; and (3) if any allegations remain, consider their plausibility while "construing them in the light most favorable

_____

[17] Alternatively, Prosecutor Defendants argue that they are entitled to qualified immunity.  While absolute immunity applies, the Court will also address qualified immunity.  *See Yarris*, 465 F.3d at 140 (for purposes of a potential appeal, district courts should address qualified immunity even where absolute immunity is found); *Pierre*, 2018 WL 5801549, at *8 (applying this guidance).

to the plaintiff, drawing all reasonable inferences in the plaintiff's favor." *Id.* (cleaned up) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)).  If at that point a "complaint alleges enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim, then it plausibly pleads a claim." *Id.* (cleaned up).  If not, the plaintiff fails to state a claim for a constitutional violation, which consequently entitles the defendant to qualified immunity.  *Id.*

The second prong considers whether the right was clearly established at the time of the official's conduct.  *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (cleaned up). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  If "the officer made a reasonable mistake about the legal constraints on his actions," then qualified immunity protects him from suit.  *Curley v. Klem*, 499 F.3d 199, 207.  The mistake must be "objectively reasonable in light of the facts known to [the officer] at the time." *Saint-Jean*, 509 F. Supp. 3d at 116.  Defendants bear the burden of proof.  *See Goldenbaum v. DeLorenzo*, 2010 WL 5139991, at *11 (D.N.J. Dec. 10, 2010).

The immunity standards governing the state law claims against Prosecutor Defendants are identical to those under federal law.  *See Saint-Jean*, 509 F. Supp. 3d at 115 (internal quotation marks omitted) ("[T]he court applies the same standards of objective reasonableness [from] . . . federal civil rights cases" to state cases.)

1. *The Complaint does not plausibly allege any constitutional violations*
    a. Malicious Prosecution[18]

The elements of a Fourth Amendment malicious prosecution claim are: (1) the defendant initiated a criminal proceeding, (2) without probable cause, (3) maliciously or for a purpose other than bringing the plaintiff to justice, (4) causing the plaintiff to suffer a deprivation of liberty consistent with the concept of seizure, and (5) the outcome of the criminal proceeding favored the plaintiff. *Id.* "Plaintiff's inability to show legal malice is fatal to [their] claim." *Harrison v. N.J. State Police*, 2023 WL 2327172, at *20 (D.N.J. Mar. 2, 2023). Legal malice is defined as "knowingly acting without probable cause" and "[a] [p]laintiff must at least show that [the] [d]efendant's conduct was reckless and oppressive in disregard of Plaintiff's rights." *Id.* (internal quotation marks omitted).

Plaintiff generally alleges that Prosecutor Defendants prosecuted him for "career advancement and other career perks[,]" but fails to allege facts in support. Compl. at Count III, ¶ 3; *see generally* Compl. While there are allegations that other Defendants, including Det. Koczur, were a part of the "Family" or other groups within the EPD, *see id.* ¶¶ 95, 97-99, Prosecutor Defendants are not alleged to have any improper affiliations. *See generally id.* Without any factual allegations supporting actual malice, Plaintiff's claim "is nothing more than a conclusory reformulation of the malice element" and will be disregarded. *Karkalas*, 845 F. App'x at 119 (citations omitted).

---

[18] Although Plaintiff does not explicitly mention the Fourth Amendment in the Complaint, Plaintiff brings a Fourth Amendment malicious prosecution claim against Prosecutor Defendants for their role in Plaintiff's prosecution. *Karkalas*, 845 F. App'x at 119 (quoting *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017)) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.").

Because Plaintiff fails to allege an element of the malicious prosecution claim, Prosecutor Defendants are entitled to qualified immunity and the Court will **DISMISS** this claim **with prejudice** (Count III). *See Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2001) ("If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [defendant] is entitled to immunity.").

b. Abuse of Process

Plaintiff brings New Jersey common law and § 1983 abuse of process claims against Pros. Rubin. A § 1983 claim for abuse of process arises when the prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law. *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989). The core of an abuse of process tort "is not the wrongfulness of the prosecution, but some extortionate perversion of [a] lawfully initiated process to illegitimate ends." *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994). To establish an abuse of process claim, "there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of [the] process." *Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 798 (D.N.J. 2008) (cleaned up).

Like the malicious prosecution count, Plaintiff does not allege any facts supporting that Pros. Rubin sought to pervert the prosecution of Plaintiff toward illegitimate ends. Accordingly, Pros. Rubin is entitled to qualified immunity, and the Court will **GRANT** her motion and **DISMISS** this claim (Count IV).

c. Due Process Violation

Plaintiff also claims Prosecutor Defendants violated his rights to due process by coercing fabricated evidence from witnesses and then using that evidence to convict Plaintiff. *See Karkalas*, 845 F. App'x at 120 (alleged due process violations for coercing fabricated evidence from

witnesses is a violation of a plaintiff's Fifth Amendment Rights).  An acquitted criminal defendant must allege: (1) a government actor's production or introduction of evidence or testimony; (2) at any point before or during a criminal proceeding; (3) that the government actor knew to be; (4) false; and (5) without that fabricated evidence, there is a reasonable likelihood that the defendant would not have been criminally charged.  *Id.* (collecting cases).

Plaintiff alleges that Pros. Rubin failed to disclose to Plaintiff or to the jury that Ms. Johnson was a police informant, depriving the jury of important context about the State's two "best witnesses."  Compl. at Count I, ¶¶ 14-15, 21-24.  Plaintiff implies such failure was a violation of his due process rights.  Pl. Opp'n at 5.  Crucially, however, Plaintiff never alleges that Pros. Rubin knew or even should have known Ms. Johnson was an informant, only that Pros. Rubin "knew or should have known" that the jury might disregard Ms. Johnson's testimony if informed she was a paid informant.  *See generally* Compl.; Count I, ¶ 15.

Overall, Plaintiff's allegations are speculative and fail to establish the necessary element that Pros. Rubin knew the information was false.  *See Pierre*, 2018 WL 5801549, at *8 (emphasis in original) (concluding that the allegations against Pros. Rubin in a related case must be dismissed because the allegation that she "*should* have known" Ms. Johnson was a confidential informant were insufficient).

Accordingly, Pros. Rubin is entitled to qualified immunity and the Court will **GRANT** her motion and **DISMISS** this claim (Count V).  *See Connelly*, 809 F.3d at 790.

d. Conspiracy

Plaintiff brings a conspiracy claim against Prosecutor Defendants under § 1983 and § 1985(3), the latter of which is a conspiracy to interfere with civil rights.  *See* 42 U.S.C. § 1985(3).

To prevail on a conspiracy claim under § 1985(3), a plaintiff must establish: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006). A plaintiff must also allege both "that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Id.* at 135.

Under both §§ 1983 and 1985, Plaintiff's allegations are insufficient because they fail to allege that Prosecutor Defendants conspired to deprive him of his constitutional rights. Rather, Plaintiff only alleges that Pros. Rubin and Lt. Johnson reviewed, discussed, and planned aspects of his prosecution, as their jobs required. Compl. ¶ 59. Moreover, under § 1985, Plaintiff alleges no facts indicating that Prosecutor Defendants were motivated by a discriminatory animus or that such discrimination was invidious.

Because Plaintiff fails to plead the existence of a conspiracy or discriminatory animus with respect to Prosecutor Defendants, they are entitled to qualified immunity and the Court will **GRANT** their motion and **DISMISS** this claim (Count VI). *See Watson v. Sec'y Pa. Dep't of Corr.*, 436 F. App'x 131, 137 (3d Cir. 2011) (dismissing both §§ 1983 and 1985 conspiracy claims when a plaintiff failed to plead an actual agreement between the parties to violate his rights).

e. Racial Discrimination

Plaintiff alleges that "[u]nder color of law, [Prosecutor Defendants] violated 42 U.S.C. § 1983 and the Fourteenth Amendment . . . by depriving [Plaintiff] of his constitutional rights [and acting] with racial animus." Compl. at Count IX, ¶ 1. Yet, Plaintiff pleads no facts that allege that

Prosecutor Defendants acted with racial animus.  *See generally* Compl.  As such, Plaintiff has failed to state a claim.  *Harrison*, 2023 WL 2327172, at *5.

Because Plaintiff fails to allege an element of the racial discrimination claim, Prosecutor Defendants are entitled to qualified immunity.  *See Bennett*, 274 F.3d at 136 ("If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [defendant] is entitled to immunity.").  The Court will **GRANT** their motion and **DISMISS** this claim (Count IX).

   2. *Prosecutor Defendants are entitled to immunity for the NJCRA claims*

As discussed above, the NJTCA provides immunity for claims brought against public employees.  Specifically, the NJTCA states that a "public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment."  N.J.S.A. 59:3-8.  This immunity is limited: "Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A. 59:3-14(a). As the Court determined above under its absolute immunity analysis, Prosecutor Defendants' alleged conduct describes actions related to the prosecution of Plaintiff: at the direction of the Union County Prosecutor's Office, Lt. Johnson interviewed witnesses following Plaintiff's arrest, and Pros. Rubin prepared for Plaintiff's trial.  *See e.g.,* Compl. ¶¶ 57-94, Count I, ¶¶ 30-59.  As such, the two were acting within the scope of their employment, and therefore, Prosecutor Defendants are entitled to qualified immunity as well.  *See Pierre*, 2018 WL 5801549, at *8 (NJTCA immunity applies to prosecutor defendants when the alleged conduct occurred within their roles as prosecutors).

Because Plaintiff cannot establish an NJCRA violation, Prosecutor Defendants are entitled to qualified immunity and the Court will **GRANT** their motion and **DISMISS** this claim (Count XI).

### E. Plaintiff Fails to State Claims of Intentional and Negligent Infliction of Emotional Distress

Plaintiff also brings New Jersey common law intentional and negligent infliction of emotional distress ("IIED" and "NIED," respectively), alleging Prosecutor Defendants "false[ly] arrest[ed], maliciously prosecut[ed], and wrongfully imprison[ed]" Plaintiff, thereby intentionally or negligently inflicting emotional distress.  Compl. at Count X, ¶ 1.

To state a prima facie case for IIED, a plaintiff must show: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Pierre*, 2018 WL 5801549, at *9 (cleaned up).  When a plaintiff fails to allege facts showing that a prosecutor defendant acted with an ulterior motive, they cannot prevail on an IIED claim.  *See id.*; *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991) (A plaintiff cannot establish intentional infliction of emotional distress by merely alleging that the defendants acted "unjust, unfair and unkind.").  Plaintiff does not set forth any allegations in the Complaint that show that Prosecutor Defendants intended to cause Plaintiff emotional distress.  *See generally* Compl.

To establish a prima facie claim for NIED, a plaintiff must show: "(1) the defendant had 'a duty of reasonable care' to the plaintiff; (2) the defendant breached said duty; (3) the 'plaintiff suffered severe emotional distress'; and (4) the breach proximately caused the plaintiff's injury. *Pierre*, 2018 WL 5801549, at *6 (citing *Dello Russo v. Nagel*, 358 N.J. Super. 254, 269 (App. Div. 2003)).  Plaintiff fails to allege any specific facts that he suffered from severe emotional distress.

*See Izzo v. Twp. of Raritan*, 2015 WL 6524343, at *6 (D.N.J. Oct. 28, 2015) (rejecting a plaintiff's NIED for the lack of allegations that showed the plaintiff suffered severe emotional distress).

Accordingly, because Plaintiff fails to sufficiently plead a claim for IIED and NIED, the Court will **GRANT** Prosecutor Defendant's motion and **DISMISS** this claim (Count X).

## IV.   CONCLUSION

For the foregoing reasons, Prosecutor Defendants' motion to dismiss will be **GRANTED**. The Court dismisses all claims against Prosecutor Defendants **with prejudice**.[19] An appropriate Order accompanies this Opinion.

Dated: June 16, 2023

Evelyn Padin, U.S.D.J.

---

[19] Plaintiff's remaining claims against Defendant Koczur will move forward.